UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>600 ALABAMA LLC, A CORPORATION,<br><br>———<br><br>MARIN MORTGAGE BANKERS CORP ("MMB"), as servicing agent for CHARLES J. FLYNN AND/OR MIK P. FLYNN, OR THEIR SUCCESSORS IN TRUST, UNDER THE FLYNN FAMILY LIVING TRUST, DATED MAY 7, 1999, AND ANY AMENDMENTS THERETO ET AL AS TO AN UNDIVIDIED $1,270,000 INTEREST,<br><br>          Appellant,<br><br>   vs.<br><br>DAVID BRADLOW,<br><br>          Appellee. | Case No: C 09-4378-SBA<br><br>Bk. No. 08-31434 DM<br>Chapter 11<br><br>**ORDER** |

This matter comes before the Court on Appellant Marin Mortgage Bankers Corp's ("MMB") appeal of the bankruptcy court's order denying its motion to disqualify David Bradlow ("Bradlow") as the Chapter 11 Trustee. The Court has jurisdiction pursuant to 28 U.S.C. § 158 and Federal Rule of Bankruptcy Procedure 8001. Having read and considered the briefs filed in connection with this matter and having reviewed the record as a whole, the Court reverses the Order and remands the case to the bankruptcy court for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); B.L.R. 8010-1(b).

# I. BACKGROUND

## A. OVERVIEW

The Debtor, 600 Alabama Street Partners, LLC ("Debtor" or "600 Alabama"), filed a Chapter 11 bankruptcy petition on August 1, 2008. The Debtor's Estate consists of two primary assets: (1) real property and improvements located at 600 Alabama Street, San Francisco, California (the "Alabama Property"); and (2) a claim in the approximate amount of $1,000,000 asserted against a related entity, 2712 Mission Partners, L.P. ("Mission Partners"), which subsequently filed for bankruptcy.

The Alabama Property is leased to a veterinarian clinic (the "Tenant"), and is encumbered by the multiple liens, as follows: (1) a first lien held by American California Bank ("ACB") in the approximate amount of $2,100,000; (2) a second trust deed held by Appellant MMB in the amount of $520,000; (3) a third trust deed held by Ken Miller ("Miller") for $150,000; (4) a fourth trust deed for $131,000 held by Loanvest V, LLC ("Loanvest"), whose principal was George Cresson; (5) and a fifth trust deed for $523,000 asserted by Lilly Chiang ("Chiang"). Appellant's Opening Brief ("AOB") 2.[1] Chiang's husband, attorney John Sullivan ("Sullivan"), was a manager of Loanvest and also had a business relationship with Miller. He also worked as an attorney for the firm representing Mission Partners. Sullivan's relationship to the lien holders, the claim against Mission Partners, and his interactions with the bankruptcy trustee, are the center of this appeal.

## B. FACTS RELATING TO TRUSTEE

On October 30, 2008, Appellee Bradlow was appointed Chapter 11 Trustee of the Debtor's Estate per Chiang's request. AOB 7. Bradlow opined that, "[t]he most important issue in the case relates to the amount of rent that is to be paid per month" by the Tenant on the Alabama Property. Excerpts of Record in Supp. of Appellee's Opening Brief ("ER") 3, Dkt. 16. After reaching a rental agreement with the Tenant, Bradlow believed that there

---

[1] Although the third, fourth and fifth deeds were placed against the Alabama Property, those deeds actually secured loans made to entities *other than* 600 Alabama. On that basis, MMB contends that the claims made by those particular lienors have no value. See AOB 6-7.

would be little equity remaining for lien holders junior to ACB (the first lienholder). Appellee's Response Brief ("RB") 5, Dkt. 14. Bradlow thus believed that it would not be worthwhile for him to take further action on behalf of the Estate unless he could find a party willing to commit the time and resources to pursue the claim against Mission Partners. Id. at 5-6.

In early 2009, counsel for Chiang/Sullivan engaged Bradlow in discussions regarding a purported strategy with respect to the claim against Mission Partners. In an email, dated January 29, 2009, their counsel told Bradlow: "We are trying to get a win-win situation, which, frankly, rescues you from a lot of high-risk, unpaid litigation responsibilities while giving our clients a chance on some recovery on their loans to the debtor." Certificate of Record ("COA") Pt. I at 83, Dkt. 3. Under the terms of the proposed deal, Chiang/Sullivan would obtain an unsecured claim in place of their otherwise worthless secured claim. Id. at 84.[2]

On or about February 2, 2009, Bradlow reached a Litigation Agreement with Chiang/Sullivan allowing them to pursue an adversary claim on Bradlow's behalf in the Mission Partners bankruptcy action. ER 26-30. That agreement also allowed Chiang/Sullivan to pursue actions to avoid the liens of the second, third and fourth trust deed holders (in the 600 Alabama bankruptcy) under 11 U.S.C. § 544(b)(2). ER 26-27. In exchange, Chiang/Sullivan agreed to prosecute all such claims at their own expense. Id. If successful, Chiang/Sullivan would be reimbursed by the Estate for all attorneys' fees and expenses, with the net recovery split equally between themselves and the Estate. ER 28.

MMB opposed the Litigation Agreement because of its potential to undermine their positions as secured lien holders in the bankruptcy. ER 31-39. According to MMB, there was no equity in the Alabama Property, and as such, the only way for Bradlow to "create equity" was to "team up" with junior lienors Chiang/Sullivan and allow them to challenge

---

[2] The secured claim was valueless because there was insufficient equity in Alabama Property. As an unsecured creditor, however, they would have access to monies recovered from the adversary action against Mission Partners. See 11 U.S.C. § 506(a)(1).

the validity of other senior secured creditors. ER 32. This, MMB claimed, would effectively allow the junior lienors and unsecured creditors to benefit at the expense of secured creditors, such as itself. Id.

The bankruptcy court issued an order approving the Litigation Agreement on March 4, 2009, and thereafter, Chiang/Sullivan, through their attorney Merle Meyers, sought to avoid the MMB lien. ER 50-57; AOB 2. In addition, on March 16, 2009, Bradlow, through counsel, signed off on a proposed agreement with Chiang/Sullivan and Loanvest, purporting to settle Loanvest's fourth position lien by granting Loanvest an unsecured claim for $131,000. COA, Pt. 6 at 17-21, Dkt. 3-5.[3] Notably, up until January 26, 2009, slightly less than two weeks prior to the motion to approve the Litigation Agreement, Sullivan was the manager of Loanvest. Id., Pt. 13 at 58, Dkt. 3-12.

Sullivan and Chiang pursued the adversary action against Mission Partners, as permitted under the Litigation Agreement. During the course of that action, Mission Partner's counsel Scott McNutt ("McNutt") became aware of a potential conflict between Sullivan and Mission Partners. In a supplemental declaration filed with the court on May 6, 2009, McNutt disclosed that Sullivan had been working as an attorney for the McNutt Law Group, which was counsel for Mission Partners. AOB 3. McNutt terminated the firm's ties with Sullivan after the bankruptcy court issued its order allowing Chiang/Sullivan to prosecute the claim against McNutt's client Mission Partners. Id. In addition, McNutt presented emails showing that Sullivan had preexisting business relationships with Miller and Loanvest, the third and fourth lienholders, respectively, of the Alabama Property. Id. The bankruptcy court was not advised of any of these potential conflicts when it initially approved the Litigation Agreement. Id. at 3.

MMB filed a motion to vacate the Litigation Agreement and to remove Bradlow as trustee in both the adversary proceeding, as well as in the 600 Alabama bankruptcy

---

[3] There was no equity in the Alabama Property to cover the third, fourth and fifth lienors, converting to unsecured creditor status gave Loanvest the possibility of recovery from the net proceeds, if any, from the adversary action that Chiang/Sullivan were pursuing against Mission Partners.

proceeding. Id. At a motion hearing on August 20, 2009, the bankruptcy court granted MMB's motion to vacate the Litigation Agreement, but denied the request to remove Bradlow. With regard to Bradlow, the court focused on its view that no actual harm resulted from the apparent conflict:

> Well, I mean, let's concede that point, that if Mr. Bradlow had – or anyone – had come and said, let's approve the settlement and allow Loanvest [the fourth position lienholder] or anyone else a claim in the amount of some amount of dollars, without disclosing things, maybe that would have been inappropriate. But it still didn't happen. In other words, I guess I've hammered on this with you before. *How can I fault someone for someone for something that didn't happen?*

Tr. 10, Aug. 20, 2009 (emphasis added); see also id. 116-17. As noted, however, Bradlow, through counsel, had, in fact, signed an agreement allowing Loanvest's $131,000 worthless claim. Id. at 9. The claim ultimately was not approved by Bradlow due to MMB's efforts to set aside the Litigation Agreement and request to disqualify him as trustee. Id.

Appellant now appeals the Order denying the motion to remove Bradlow as trustee on the ground that the bankruptcy court abused its discretion by applying an erroneous legal standard in deciding whether to remove Bradlow as trustee. The matter has been fully briefed and is now ripe for decision.[4]

## II. LEGAL STANDARD

A bankruptcy court's decision on a request to remove a trustee under 11 U.S.C. § 324 is reviewed for abuse of discretion. In re AFI Holding, Inc., 355 B.R. 139, 147 (9th Cir. BAP 2006) ("AFI I"). "A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or on clearly erroneous factual findings." Id. It also abuses its discretion if it applies an incorrect legal rule. Id.

## III. DISCUSSION

Appellant argues that Bradlow should be removed as trustee, pursuant to 11 U.S.C. § 324, based on an appearance of impropriety. AOB 16. Section 324 provides that "[t]he

---

[4] In light of the Court's analysis, the Court does not reach the merits of MMB's remaining arguments.

court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, *for cause*." 11 U.S.C. § 324(a) (emphasis added).  At issue here is whether the bankruptcy court applied the proper standard when evaluating "cause" for a trustee's removal.  MMB contends that the bankruptcy court abused its discretion by applying what it contends was tantamount to an "actual harm" standard.  More specifically, MMB asserts that the bankruptcy court erroneously concluded that its decision to invalidate the Litigation Agreement and the fact that the trustee ultimately did seek approval of Loanvest's claim obviated the need to remove Bradlow as trustee, since no actual harm resulted from Bradlow's apparent conflict of interest.  AOB 16-17.  Rather, MMB argues that the bankruptcy court should have considered whether Bradlow involvement as trustee created an appearance of impropriety.

In assessing whether to remove a trustee for a conflict of interest under § 324, the bankruptcy court must consider whether the trustee is "disinterested."  In re AFI Holding, Inc., 530 F.3d 832, 837-38 (9th Cir. 2008) ("AFI II").[5]  "A trustee/fiduciary must be free from any hint of bias."  Id. at 850.  "[D]isinterestedness covers not only actual impropriety, but the appearance of impropriety as well."  Id. (internal quotations omitted).  The bankruptcy court's consideration of whether to remove a trustee under § 324 "is determined on a case-by-case, totality-of-circumstances approach[.]"  Id.  In that regard, a court should consider whether:  (1) the trustee has "some interest or relationship that would even faintly color the independence and impartial attitude required by the Code"; (2) the "conflict is sufficiently materially adverse to the estate to find a lack of disinterestedness"; and (3) "a trustee's past affiliations with insiders and an appearance of impropriety that may create a potential for a materially adverse effect on the estate."  Id. at 838 (citing AFI I, 355 B.R. at 151).

---

[5] While the AFI dealt with a Chapter 7 trustee and the instant case deals with a Chapter 11 trustee, both require that the trustee be disinterested making the holding applicable.  See AFI II, 530 F.3d at 852 n.16; 11 U.S.C § 702(a)(1);11 U.S.C § 1104(b) and (d).

Here, the bankruptcy court did not consider whether the trustee was disinterested or whether his prior affiliations created an appearance of impropriety.  Rather, the court predicated its decision on the conclusion that no harm occurred because it rescinded its approval of the Litigation Agreement and because Bradlow never sought judicial approval of the Loanvest claim.  In other words, the bankruptcy court focused entirely on the issue of actual harm.  As discussed above, however, the Ninth Circuit has not adopted such an approach.  Insofar as the bankruptcy court did not analyze MMB's motion to disqualify Bradlow based on the considerations set forth in AFI II and instead required a showing of actual harm, the bankruptcy court abused its discretion by applying the incorrect legal standard.  See AFI I, 355 B.R. at 147.  On remand, the bankruptcy court should reconsider MMB's request to remove Bradlow as trustee, consistent with the standards as set forth above.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT that Bankruptcy Court's Order is REVERSED and the case REMANDED in accordance with this opinion.

IT IS SO ORDERED.

Dated: September 28, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

IN RE: 600 ALABAMA LLC,

        Plaintiff,

  v.

IN RE: 600 ALABAMA LLC et al,

        Defendant.

                           Case Number: CV09-04378 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 28, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

  U.S. Bankruptcy Court, No. District of CA (San Francisco)
Clerk's Office
235 Pine Street
P.O. Box 7341
San Francisco, CA 94120-7341


Dennis Montali
US Bankruptcy Court
Northern District of California
P. O. Box 7341
235 Pine Street
San Francisco, CA 94120-7341


Dated: September 28, 2010
                                      Richard W. Wieking, Clerk

                                          By: LISA R CLARK, Deputy Clerk